SO ORDERED.

SIGNED this 11 day of July, 2006.

J. Rich Leonard
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

TOMMY T. HAYNES and                                    Case No.:
CONNIE W. HAYNES,                                      05-01039-8-JRL

       Debtors.


UNITED STATES OF AMERICA,

       Plaintiff,

   v.                                                  Adversary Proceeding No.:
                                                       05-00265-8-AP
TOMMY T. HAYNES and
CONNIE W. HAYNES,

       Defendants.
_____

### ORDER

The matter before the court is the plaintiff's complaint to determine dischargeability of a debt. On

June 26, 2006, the court conducted a trial in New Bern, North Carolina.

### FINDINGS OF FACT

1.      The defendants own and operate Haynes Nursery, Inc. ("Haynes Nursery"), a wholesale

plant nursery located in Fairbluff, North Carolina.

2.      Haynes Nursery sustained damage from Hurricanes Fran, Bonnie, and Floyd, requiring

the greenhouses to be rebuilt three times in five years.

3.      The hurricanes also destroyed plant stock, resulting in a loss of sales and business

income.

4.      On June 2, 2003, Haynes Nursery, by and through the defendants, received two loans in

the amounts of $132,200.06 and $40,000 from the United States of America through its

agency and instrumentality, the Farm Service Agency ("FSA").

5.      The loans were secured by the defendants' personal property, including certain items of

farm machinery and equipment and crops grown on certain described land. The plaintiff's

lien on the equipment and crops was perfected by filing a financing statement with the

North Carolina Secretary of State.

6.      In February 2004, the defendants received an additional $23,000 from the FSA (the

"third loan"), secured by a first lien on all nursery stock and equipment.

7.      Under the terms of the 2003 loan agreement, the defendants were required to make eight

annual payments of $21,521 beginning on May 1, 2004.

8.      Under the terms of the 2004 loan agreement, the defendants were required to repay the

$23,000 loan in full with interest at 3.75% on June 1, 2004.

9.      The defendants failed to make the annual payment in May 2004 or repay the third loan in

June 2004.

10.     The defendants filed a Chapter 13 petition on February 9, 2005 and the case was

subsequently converted to Chapter 7 on June 17, 2005.

11.     The plaintiff asserts that the defendants converted its collateral by selling nursery stock in

2003 and 2004 and failing to account for the crops or the sale proceeds.

12.     Due to the defendants' failure to remit sale proceeds from nursery stock to FSA in

violation of the loan agreements, the plaintiff contends that the debt to FSA is

nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

13.     The defendants used the proceeds from the sale of nursery stock to maintain the nursery

business and allow for an auction of their equipment and stock in November 2004 for the

benefit of FSA.

## ANALYSIS

Under 11 U.S.C. § 523(a)(6), a discharge under 11 U.S.C. § 727 does not discharge an

individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the

property of another entity." The United States Supreme Court has found that "the word 'willful' in (a)(6)

modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not

merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61

(1998). The Fourth Circuit had held that the test under § 523(a)(6) is "whether the debtor acted with

'substantial certainty that harm would result or a subjective motive to cause harm.'" Parsons v. Parks (In

re Parks), Case No. 03-1072, 2003 U.S. App. LEXIS 25793, *4 (4th Cir. 2003) (citing Miller v. J.D.

Abrams, Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998)).

Pursuant to the Geiger court's interpretation, § 523(a)(6) does not encompass acts done

intentionally that cause injury, only "acts done with the actual intent to cause injury." Geiger, 523 U.S. at

3

61. The debtor in <u>Geiger</u> was a physician who carried no medical malpractice insurance. <u>Id.</u> at 59. The petitioner, Mrs. Kawaauhau, sought treatment from the debtor for a foot injury. The debtor admitted Mrs. Kawaauhau to the hospital and prescribed oral penicillin to minimize the cost of treatment, although he was aware intravenous penicillin would be more effective. <u>Id.</u> The antibiotics were discontinued when the debtor believed the infection had subsided but the petitioner's condition worsened requiring the amputation of her right leg below the knee. <u>Id.</u>

Mrs. Kawaauhau and her husband sued the debtor for malpractice and was awarded damages in the amount of $355,000. <u>Id.</u> The debtor subsequently filed a bankruptcy petition and the Kawaauhaus filed an adversary proceeding in his case to determine the dischargeability of the malpractice judgment. <u>Id.</u> at 60. The Court observed that although the debtor deliberately chose less effective treatment, he did not intend to cause injury to Mrs. Kawaauhau. Holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," the Court affirmed the Eighth Circuit's determination that the malpractice judgment debt was dischargeable. <u>Id.</u> at 64. <u>See also</u> <u>Fowler v. Fowler</u> (<u>In re Fowler</u>), 312 B.R. 287, 291 (Bankr. E.D.N.C. 2004).

In this case, the defendants knowingly failed to make payments to FSA as required under their loan agreements. The bank records of Haynes Nursery from May 2004 to November 2004 show that the defendants were selling nursery stock and using the proceeds to pay expenses, including insurance, utilities, vendors, and taxes.[1] The defendants were also making payments to themselves during that period, referred to as principal draws, in the total amount of $9,420. The plaintiff asserts that the

---

[1] At trial, the plaintiff presented bank records and canceled checks belonging to the defendants and Haynes Nursery. These documents were admitted into evidence by the court.

4

defendants' deliberate failure to make payments on the FSA loans after June 1, 2004, their payments to other creditors, and their numerous principal draws constitutes a "willful and malicious" injury to FSA that prevents them from receiving a discharge on the FSA debt.

The defendants argue that they did not make payments on the loans because they intended to liquidate the FSA collateral and satisfy the loans with the sale proceeds. Working with an FSA representative, the defendants maintained the nursery stock and prepared for the auction sale scheduled for November 2004.[2] The defendants contend that they paid other creditors in order to keep the nursery operating until the auction  Under their Farm and Home Plan, prepared by FSA, the defendants' annual family expenses were listed in the amount of $34,276. The principal draws made in the eight month period between May 2004 and November 2004 were less than a third of their annual budget under the plan. The defendants assert that their actions were not willful and malicious and they did not intend injury to FSA.

The defendants in this case knowingly breached their loan agreement with FSA by failing to make their annual payment on May 1, 2004 and failing to repay the third loan on June 1, 2004. The United States Supreme Court noted in <u>Geiger</u> that an injury arising from a "knowing breach of contract" should not qualify under § 523(a)(6) as a nondischargeable debt. <u>Geiger</u>, 523 U.S. at 62. Although North Carolina recognizes an "independent tort arising out of breach of contract," the independent tort "alleged must be identifiable." <u>Broussard v. Meineke Disc. Muffler Shops</u>, 155 F.3d 331, 346 (4th Cir. 1998); <u>Strum v. Exxon Co., USA</u>, 15 F.3d 327, 331 (4th Cir. 1993). The plaintiff in this case has not identified

---

[2] The sale proceeds from the November 2004 auction were less than the total amount of the FSA debt.

an independent tort arising from the defendants' breach.

The defendants did not intend the injury to FSA, as the court credits Mr. Haynes' testimony that he intended to substantially satisfy the debt through a sale of the collateral. The defendants did sell nursery stock but it was in an effort to continue operations until a sale could be completed. The funds transferred subsequent to the FSA default were for legitimate business expenses, not for personal obligations. There was no attempt by FSA to seize its collateral, as it was entitled to under the loan agreements, and the defendants were not directed to remit payments to FSA after every sales transaction. The principal draws were not outside the allowed expenditures approved by the FSA in its Farm and Home Plan. The defendants' actions may have been reckless or negligent but the injury was not deliberate and does not rise to the level of "willful and malicious" as interpreted by the Geiger court.

## CONCLUSION

Based on a preponderance of the evidence, the court finds that the failure to pay plaintiff's debt was not the result of a willful and malicious injury inflicted by the defendants under § 523(a)(6). The debt owed by the defendants to the United States of America, through its agent FSA, is dischargeable. The clerk is directed to enter judgment accordingly.

**"End of Document"**

6